UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAN MARINE LTD., <br><br> Plaintiff, <br><br> -against- <br><br> INGOSSTRAKH INSURANCE COMPANY, <br><br> Defendant. | 09 Civ. 8677 <br><br> **VERIFIED COMPLAINT** |

Plaintiff Clan Marine Ltd. ("Clan Marine" or "Plaintiff") for its Complaint against Ingosstrakh Insurance Company ("Ingosstrakh" or "Defendant") alleges as follows:

**Nature of the Action**

1. Plaintiff Clan Marine brings this action pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B") against Defendant for the breach of a policy of marine hull and machinery insurance, as more fully described herein, covering the Cambodian flagged shipping vessel M/V A.P. SKY (the "Vessel").

**The Parties**

2. At all material times, Clan Marine was, and still is, a foreign corporation, organized and existing under and by virtue of the laws of a foreign country, with an office and place of business in Piraeus, Greece.

3. At all material times, Defendant Ingosstrakh was, and still is, a foreign corporation, or other business entity, organized and existing under and by virtue of the laws of a foreign country, with an office at Lesnaya St., 41, Moscow 127994, Russia. Defendant is an

insurance company that provides various types of coverage including hull and machinery insurance.

## Jurisdiction and Venue

4.  This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. § 1333.

5.  Upon information and belief, the Defendant cannot be found within this Judicial District within the meaning of Rule B, but the Defendant is believed to have or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, consisting of cash, funds, freight, hire credits in the hands of garnishees in this District, including but not limited to electronic fund transfers.

6.  Defendant is not registered to do business in the State of New York.

7.  Upon information and belief, Defendant does not carry on any activities within this Judicial District or the State of New York which would subject it to general or specific personal jurisdiction.

8.  Pursuant to the agreement at issue, Defendant has not appointed an agent for service of process in this Judicial District.

9.  Defendant has not consented to jurisdiction in New York for purposes of Rule B.

## Facts

10.  Defendant Ingosstrakh has breached a time hull and machinery insurance policy pursuant to which it contracted to insure the hull and machinery of the Vessel for the period from December 17, 2007 until December 17, 2008. The Vessel incurred severe damage to covered machinery during the policy period. Defendant Ingosstrakh, however, has refused to

pay the plaintiff as required under the policy, despite due demand.  Due to loss of earnings and losses related to repairs caused by the damage to covered machinery, Plaintiff has suffered damages in an amount to be determined at trial but currently estimated as US $3,017,435.52, exclusive of costs and fees.

**The Insurance Policy and the February Incident**

11. On December 17, 2007, Ingosstrakh, as insurer, Carolina Shipping Ltd. ("Carolina"), as owners, and Popov Ship Management Ltd. ("Popov"), as managers, entered into an insurance policy, no. 0010187, containing an amended Institute Time Clause, (the "Policy"), whereby Ingosstrakh contracted to cover the Vessel's hull and machinery for a period of twelve months commencing on the date of contract.  A copy of the Policy is annexed hereto as Exhibit A.  The Policy covered the hull and machinery of the Vessel, a general cargo vessel built in 1979, DWT 5210, up to the amount of US $2,000,000.

12. On February 21, 2008, the Vessel suffered a failure of the lube oil pump, resulting in severe damage to the crankshaft and bedplate of the main engine (the "February Incident").  On February 22, 2008, Carolina sent a message to Ingosstrakh via insurance brokerage channels about the details of the incident.  Ingosstrakh responded with recommendations for towage and details of the appointed surveyor.

13. On March 3, 2008, Clan Marine replaced Popov as managers of the Vessel.  A copy of the Management Agreement is annexed hereto as Exhibit B.  Clan Marine thereafter arranged for the Vessel's repairs under the supervision of Ingosstrakh.  Ingosstrakh determined that the main engine could not be repaired at anchorage and would require towage elsewhere.  Clan Marine complied with Ingosstrakh's directions and towed the vessel to Ilyichevsk for repairs.  Clan Marine submitted all costs and terms of corresponding arrangements

to Ingosstrakh for approval and acceptance. Preliminary repairs were commenced on March 11, 2008 pursuant to agreement by Ingosstrakh. On March 21, 2008, Ingosstrakh advised the insured that Ingosstrakh would have to approve all further repairs and steps taken in the repair of the covered machinery due to the February Incident.

        14. On March 28, 2008, a survey was submitted to Ingosstrakh for the damaged lube oil pump, confirming the existence of a latent defect in damaged internal parts. On April 7, 2008, an inspection report was provided to Ingosstrakh indicating that the damaged crankshaft was not repairable. On the same day, Clan Marine sent Ingosstrakh updated statements of expenses and lists of required spare parts for repair, requesting approval. Ingosstrakh, however, provided no response. In May, 2008, Clan Marine sent an inspection report indicating the bedplate was not repairable and continued to send requests for spare parts to Ingosstrakh that went unanswered.

        15. On June 7, 2008, Ingosstrakh finally provided approval for the purchase of spare parts to repair the Vessel as a result of the February Incident. A copy of the June 7, 2008 Letter is annexed hereto as Exhibit C. Due to the lapse in time in providing Clan Marine a response, however, the price quotes on the spare parts were no longer valid. As a result, Clan Marine issued updated price quotes on the spare parts to Ingosstrakh and simultaneously issued to them a formal claim notice holding Ingosstrakh fully responsible for increasing the cost of repair work due to their prolonged delay in providing approval. A copy of the Claim Notice is annexed hereto as Exhibit D. On July 2, 2008, Ingosstrakh approved the updated costs of spare parts and repairs, except in regards to the bedplate, which it concluded could be repaired. This conclusion was at odds with the manufacturer's opinion and the inspection report. By the end of

July, however, Clan Marine had ordered all necessary spare parts, including the bedplate, with advance payment having been arranged. All repairs were thereafter made.

16. On December 18, 2008, former manager Popov assigned any potential recovery based on the February Incident to Clan Marine. A copy of the Letter Assigning Claim is annexed hereto as Exhibit E.

17. On December 22, 2008, the Vessel was surveyed by a Class Surveyor and class/statutory certificates were issued and reactivated. Sea trials were successfully completed on December 26, 2008 and the Vessel thereafter commenced its activities.

18. On December 31, 2008, Clan Marine submitted a claim to Ingosstrakh for the damage to the Vessel (the "Claim") due to the damage to the main engine crankshaft and bedplate resulting from a latent defect in an attached lube oil pump which caused its failure. A copy of the December 31, 2008 Letter is annexed hereto as Exhibit F. Ingosstrakh has heretofore denied coverage for the Claim, thereby breaching the Policy.

19. As a result of Defendant's breach of the Policy, Plaintiff has been damaged based on the costs of repairs in the principal sum of US $1,846,309.01.[1] *See* Exhibit F.

20. Based on Ingosstrakh's instructions regarding the conduct of repairs, Plaintiff was prevented from employing the Vessel for a period of 167 days. A copy of the April 22, 2009 Letter is annexed hereto as Exhibit G. Had Plaintiff been permitted to employ the Vessel during that time frame, the Vessel would have earned a daily rate of US $7,000. Due to Ingosstrakh's refusal to permit the operation of the Vessel, Plaintiff lost US $1,169,000 in total earnings (the "Loss of Earnings").

---

[1] Currency exchange rates have been measured as of October 8, 2009.

21.     Damages as a result of Loss of Earnings and losses related to repairs total US $3,017,435.52.  Defendant has refused to reimburse Plaintiff for this amount, despite due demand.

**Recovery of Costs and Fees**

22.     As a result of Defendant's breach of the Insurance Policy, Plaintiff has suffered damages in an amount to be determined at trial but currently estimated as US US $3,017,435.52.

23.     Plaintiff intends to commence legal proceedings against Defendant in the High Court of Justice in London, England as dictated by the jurisdictional clause of the Insurance Policy, for Defendant's breach of the Insurance Policy.

24.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under the laws of England.  Plaintiff will seek the award of interest pursuant to Section 35A of the Supreme Court Act 1981.  Plaintiff currently estimates that the obtaining of a judgment in the High Court will take approximately three years from the time of filing.  As such, Plaintiff estimates that it will be entitled to the recovery of interest in the amount of US $724,184.52 as a result of the foreign proceeding.

25.     Plaintiff currently estimates that it will incur attorneys' fees in the amount of GBP 250,000 based on English litigation over a three year duration.  Pursuant to current exchange rates, this amount is the equivalent of US $402,317.35.

26.     Accordingly, Plaintiff seeks an attachment in the total amount of US $4,143,937.39 calculated as follows:  US $3,017,435.52 in damages for Plaintiff's principal claim; US $724,184.52 in estimated interest on principal claim at 8% per annum; US $402,317.35 in estimated attorneys' fees and expenses.

**WHEREFORE**, Plaintiff prays:

That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against them.

That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendant's tangible or intangible property or any other funds held by any garnishee in the District which are due and owing to or otherwise the property of the Defendant up to the amount of US $4,143,937.39 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint.

New York, New York
October 13, 2009

                                          SEWARD & KISSEL LLP

                                          By:  s/Bruce G. Paulsen
                                               Bruce G. Paulsen (BP 9563)
                                               Kimberly E. White (KW 0141)
                                               One Battery Park Plaza
                                               New York, New York 10004
                                               (212) 574-1200

                                               *Attorneys for Plaintiff Clan Marine, Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAN MARINE LTD.,<br><br>                              Plaintiff,<br>– against –<br><br>INGOSSTRAKH INSURANCE COMPANY,<br><br>                              Defendant. | **09 Civ. 8677**<br><br>**DECLARATION OF<br>YURI PETROSEAN<br>PURSUANT TO 28 U.S.C. § 1746** |

Yuri Petrosean hereby declares pursuant to 28 U.S.C. § 1746, that:

1. I am the General Manager of Plaintiff Clan Marine, Ltd.

2. I have read the foregoing complaint and believe the contents thereof to be true to the best of my knowledge, information, and belief.

3. The basis for my knowledge is the statements made by and correspondence with the Defendant, the marine hull insurance policy and other documents relevant to this case, and a reasonable investigation of the facts and circumstances giving rise to the claims alleged herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed October 13, 2009

                                                                    __s/ Yuri Petrosean_____

SK 99159 0020 1028754 v2

8